# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |  |
|---|---|---|
| KATHLEEN L. WATTS, *et al.*, *on behalf of themselves and all others similarly situated*, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:25-cv-01093 (MSN-IDD) |
| v. | ) ) ) | |
| TROY E. MEINK, SECRETARY, U.S. DEP'T OF THE AIR FORCE, | ) ) ) | |
| Defendant. | | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**INTRODUCTION**

Plaintiffs, on behalf of themselves and a class of similarly-situated individuals, challenge the regulations that govern how the Air Force refers members into the Disability Evaluation System ("DES"), the system that determines whether a member is medically unfit for continued military service. These regulations, known collectively as pre-IDES, are consistent with Congress' statutory directive that grants the Secretary of the Air Force discretion to determine processes to implement the DES. Pre-IDES is also consistent with Department of Defense regulations to the military departments on the implementation of the DES. Plaintiffs' arguments to the contrary rest on flawed assumptions about the statutory and regulatory scheme. As described below, the pre-IDES is neither arbitrary and capricious, contrary to law, or agency action short of statutory right.

Finally, Plaintiffs contend that they have a property interest in the mere act of referral into the DES, such that they are entitled to certain procedural protections when the Air Force does not refer them to that process. As the case law demonstrates, Plaintiffs have no property interest in whether they are referred to the DES.

Accordingly, the Secretary asks that this Court grants his motion for summary judgment and deny Plaintiffs' motion for the same.

**BACKGROUND**

**I.    Statutory and Regulatory Background**

Below, the Secretary explains fitness for duty evaluations in the Air Force, the DES, and how the pre-IDES process refers members of the Air Force to the DES.

### A. Fitness Evaluations in the Air Force

Air Force members are assessed for medical fitness on a recurring basis[1] and whenever they visit their primary care physician. "[Primary care staff] [w]ill determine whether service members meet retention and/or deployment standards[.]" DAFMAN 48-123 § 2.11.1.[2] Additionally, primary care staff "[d]etermines whether service members are able to perform duties required by their [Air Force Specialty Code][3] and do [a] fitness assessment."[4] *Id.* § 2.11.2.

Members have an obligation to report concerns for conditions which may affect fitness for continuing to serve and must complete a yearly assessment to verify their fitness for duty. Each military member must complete a periodic health assessment at least once a year. AFI 48-170 § 3.3.[5] The medical provider conducting the periodic health assessment shall "[a]ssess Service members to verify they meet retention, mobility, duty, and fitness standards in accordance with AFI 48-123, Medical Examinations & Standards and AFI 48-133, Duty Limiting Conditions." *Id.* § 2.17.2. Periodic health assessments are completed pursuant to statute and Department of Defense policy. *See* 10 U.S.C. § 1074; DoDI 6025.19.

As part of the process of regularly assessing members for fitness for duty, Air Force regulations establish a team of medical professionals to meet monthly and review the cases of service members with a duty-limiting condition that affects mobility, retention or long-term physical fitness. DAFMAN 48-108 § 1.2.4. This team of medical professionals is known as the Airman Medical

---

[1] This discussion is limited to fitness assessments during continued service. Other physical health assessments, like flight duty assessments, also occur regularly and are also governed by DAFMAN 48-123, but rest on distinct statutory and regulatory provisions not at issue here.

[2] https://static.e-publishing.af.mil/production/1/af_sg/publication/dafman48-123/dafman48-123.pdf.

[3] An Air Force Specialty Code is an alphanumeric string used by the Air Force to classify, identify, and manage jobs. DAFMAN 36-2100 at 137.

[4] Air Force Specialty Code, an administrative designator which describes the job function of a particular Airman.

[5] https://static.e-publishing.af.mil/production/1/af_sg/publication/afi48-170/afi48-170.pdf

Readiness Optimization ("AMRO") Board and are at every military treatment facility in the Air Force's purview. Woody Decl. (Dkt. 41-1) ¶ 4; Stangle Decl. (Dkt. 41-2) ¶ 4. There are several ways a member may come to the attention of an AMRO Board: by a commander, a medical provider, or the AMRO Board's own review processes. Regardless of who sends a member to the AMRO Board, all are sent because of "trigger events." "Trigger events are conditions or occurrences which may indicate a service member has medical or mental health conditions that are inconsistent with retention standards or deployability." *Id.* The non-exhaustive list of trigger events includes:

1) "A provider (PCM or specialist) identifies a service member with a definitive diagnosis which does not meet retention standards for continued military service per DoDI 6130.03 V2, DAFMAN 48-123, or the MSD." DAFMAN 48-108 § 2.3.1.1.

2) "… the AMRO Board identifies a service member with a long-standing [temporary medical deferment] and the medical condition appears unlikely to resolve within 300 cumulative calendar days…" *Id.* § 2.3.1.2.

3) "When a service member's commander requests evaluation due to poor duty performance or deployment concerns stemming from a potential medical or mental health condition." *Id.* § 2.3.1.3.

4) "A permanent change of station (PCS), temporary duty (TDY), or deployment is cancelled for a medical or mental health reason." *Id.* § 2.3.1.4.

5) "AFPC/DPMNR or ARC SG's office directs an [Initial Review-In-Lieu-Of]." § 2.3.1.5.

In other words, not all individuals reviewed by the AMRO Board will have a medical diagnosis or will have been identified by a provider for AMRO Board review. *See* DAFMAN 48-108 § 2.3. A member may be reviewed by the AMRO Board even if her condition has not yet stabilized, is not permanent, has not yet received appropriate treatment, or where the course of progression is not yet known. *See id.* § 1.2.4 and 2.3.

When a trigger event is recognized, the AMRO Board works with providers and the Physical Evaluation Board Liaison Officer ("PEBLO") to assemble the pertinent medical records. *Id.* Once the

3

records are assembled, the case is reviewed at the next scheduled AMRO Board meeting, which are required to be held monthly. *Id.* §§ 1.2.4, 1.2.4.3, 2.3, 2.3.3-.4. The AMRO Board's duties include timely scheduling of specialty referrals, troubleshooting barriers to care, monitoring servicemembers adherence to treatment plans, and collaborating with commanders. *Id.* § 2.3.4.1. In addition to facilitating care, the AMRO Board reviews the medical conditions, treatment, and prognosis of servicemembers to identify whether the servicemember needs "evaluation for potential referral to the [Disability Evaluation System]." *Id.* § 1.2.4.2.

### B. Disability Evaluation System

Congress has authorized the secretaries of the military departments to grant separations or retirements (depending on length of service and total disability rating) to service members "unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay" or authorized absence. 10 U.S.C. §§ 1201(a), 1203(a). While statutory language establishes the "general guidelines for the process that the service member is due," "[m]ost of the details . . . are defined through rules generated by the Secretary of Defense and secretaries of the military services." *Torres v. Del Toro*, 2022 WL 5167371, at *1 (D.D.C. Oct. 5, 2022) (citing 10 U.S.C. §§ 1216, 1222(C)).

In accordance with Title 10 and relevant regulations, "the standards for all determinations related to disability evaluation will be consistently applied to all service members, both Active Component and Reserve Component." Department of Defense Instruction ("DoDI") 1332.18 § 1.2(a). To ensure this consistency, the Department of Defense ("DoD") established DES. "The [DES] is the mechanism for determining fitness for duty because of disability, and whether a Service member (including initial entry trainees, Military Academy cadets, and midshipmen) found unfit for duty due to disability will be separated or retired." DoDI 1332.18 § 1.2(a); *see also Keltner v. United States*, 165 Fed. Cl. 484, 487 (2023) (stating the DoD's DES "prescribes the standards and processes the

military uses to determine whether a service member is fit for duty or should be retired or separated due to a disability.").

Relevant here, service members proceed through the Integrated Disability System ("IDES" or "DES"). "[T]he IDES is the joint DoD/VA process by which DoD determines whether ill or injured Service members are fit for continued military service, and the DoD *and [the Department of Veterans Affairs]* determine appropriate benefits for Service members who are separated or retired for disability[.]" *Keltner*, 165 Fed. Cl. at 488 (citations and internal quotation marks omitted) (emphasis in original).[6]

In general, the DES process involves: "(1) a medical evaluation, including a medical evaluation board ('MEB') review, impartial medical reviews, and an opportunity for the service member to provide a rebuttal; and (2) a disability evaluation, including a physical evaluation board ('PEB') review, counseling, case management, adjudication, and a final disposition." *Keltner*, 165 Fed Cl. at 489 (citing DoDI 1332.18 § 3.1). "[C]ompetent medical authorities" are charged with referring members to the DES. DoDI 1332.18 § 5.2.b.

### C. Air Force Regulations on Referrals to DES

To ensure appropriate referrals to the DES, the Air Force has implemented a two-step referral process to the DES. This process, known as pre-IDES, is described in Department of the Air Force Instruction ("DAFI") 36-2212[7] and Department of the Air Force Manual ("DAFMAN") 48-108.[8] The

---

[6] The other process in DES is the Legacy Disability Evaluation System ("LDES"). "If a service member is processed through the LDES, the DoD alone determines whether ill or injured service members are fit for continued military service and entitled to disability benefits. The IDES, by contrast, is integrated in that it is jointly implemented by both the DoD and the United States Department of Veterans Affairs." *Keltner*, 165 Fed. Cl. at 489. IDES is the default process in DES. *Id.*; *see also* DoDI 1332.18 § 1.2(c).

[7] https://static.e-publishing.af.mil/production/1/af_a1/publication/dafi36-3212/dafi36-3212.pdf

[8] https://static.e-publishing.af.mil/production/1/af_sg/publication/dafman48-108/dafman48-108.pdf

first step is preliminary AMRO Board review. As noted *supra*, the AMRO Board proactively reviews servicemembers to identify medical issues, accepts referrals from commanders and providers, and reviews cases with or without a medical provider endorsing concerns for fitness. The AMRO Board must review a servicemember's case within 45 days of when a case is first referred to it. DAFMAN 48-108 § 2.3.4. If the AMRO Board believes that the service member has conditions "that may render them unfit for continued military service . . . , or are found to be unable to deploy," it undertakes an initial review of medical records ("IRILO"). *Id.* § 2.4. The IRILO must occur within 30 days of the AMRO Board's initial screening. *Id.* § 2.4.2. The AMRO Board makes a recommendation as to whether a referral to DES is required or whether the member should be returned to duty. *Id.* § 2.4.3.1. The AMRO Board must forward its recommendation on to the second step of the pre-IDES within three days of making this decision. *Id.* § 2.4.3.2.

The second step in pre-IDES, if necessary, is review by either the Air Force Personnel Center Medical Retention Standards Office ("AFPC/DPMNR")[9] (in the case of active duty members) or the Air Force Reserve Surgeon General's ("ARC SG") (in the case of reservists). To initiate step two, the AMRO Board forwards a service member's IRILO packet, a commander's impact statement, and the AMRO Board's recommendation to the AFPC/DPMNR.[10] *Id.* §§ 2.4.3, 2.4.4. AFPC/DPMNR is led by a licensed physician who supervises a staff of six medical providers that review the IRILO packages to determine whether a servicemember meets the criteria in DoDI 1332.18 for referral to the DES. Woody Decl. (Dkt. 41-1) ¶ 1; *see also* DAFMAN 48-108 § 2.1.

---

[9] DAFMAN 48-108 refers to Medical Retention Standards Branch as "DP2NP." Because of a name change, that office is now referred to as "DPMNR." For ease of reference, references to DP2NP in the regulation have been changed to DPMNR in this brief.

[10] Because active duty members of the Air Force are the largest group within the Air Force, the brief will use the active duty pre-IDES process as a short hand for both active duty and reserve components. *See* Service Member Quality of Life Improvement and National Defense Authorization Act for Fiscal Year 2025, Pub. Law No. 118-159 § 401; § 411(a), 138 Stat. 1773 (2024).

DoDI 1332.18 provides for referral to the DES where:

1) "One or more medical conditions that may, singularly, collectively, or through combined effect, prevent the Service member from reasonably performing the duties of their office, grade, rank, or rating, including those duties remaining on a Reserve obligation for more than 1 year after diagnosis;

2) A medical condition that represents an obvious medical risk to the health of the member or to the health or safety of other members; or

3) A medical condition that imposes unreasonable requirements on the military to maintain or protect the Service member."

*Id.* § 5.2. If AFPC/DPNMR determines the member meets these criteria, it may direct a Medical Evaluation Board, which is the first step of the DES.[11] DAFMAN 48-108 § 3.1.1.2. Otherwise, it will return the member to duty or return the package to AMRO Board without action, with an annotation for the supporting reason. *Id.* § 3.1.1. Regardless of outcome, AFPC/DPNMR has 10 calendar days to act on a member's case. *Id.* § 2.4.4. AFPC/DPMNR reviews 60-100 cases daily against the guidance in DoDI 1332.18. Stangle Decl. (Dkt. 41-2) ¶ 5.

## II.     Procedural History

Plaintiffs, on behalf of themselves and those similarly situated, filed this lawsuit, alleging entitlement to relief under four different provisions of the Administrative Procedure Act ("APA"): (1) DAFMAN 48-108 is contrary to constitutional right, power, privilege, or immunity pursuant to 5 U.S.C. § 702(2)(B), because Section 1602 of 10 U.S.C. § 1071 creates a property interest in retirement benefits protected by the Due Process Clause, Compl. ¶¶ 138-144 (Count I); (2) DAFMAN 48-108, and its application to Plaintiffs and the class, is arbitrary, capricious, and contrary to law, pursuant to 5 U.S.C. § 706(2)(A), because it violates the provision of the DoDI that requires prompt referral into

---

[11] Where AFPC/DPNMR directs an MEB, the referral to the MEB is completed by the member's medical provider. DAFMAN 48-108 § 3.1.1.7.3.

the IDES upon determining a service member suffers from a condition that may be permanently inconsistent with retention standards, Compl. ¶¶ 145-150 (Count II); (3) DAFMAN 48-108 is contrary to the "uniformity mandate" of 10 U.S.C. § 1071, and thus is agency action short of statutory right, 5 U.S.C. § 706(2)(C), Compl. ¶¶ 151-155; and (4) screening pursuant to DAFMAN 48-108 violates the procedural protections of 10 U.S.C. § 1071 and DoDI 1332.18, 5 U.S.C. § 706(2)(D), Compl. ¶¶ 156-160 (Count IV).

On November 3, 2025, Plaintiffs moved to certify the following class pursuant to Federal Rule of Civil Procedure 23(b)(2):

> All current and former members of the United States Air Force, including the Air Force Reserve and Air National Guard, who, from January 1, 2019, to the present, were identified by an Air Force medical authority as having one or more medical conditions that did not meet retention standards, remained duty-limited for twelve months or more, or were prohibited from deployment or permanent change of station ("PCS") due to the risk or burden of a medical condition, and who were referred into the Air Force's Pre-IDES, and did not receive access to the Integrated Disability Evaluation System ("IDES").

Mot. to Certify Class, Proposed Order (Dkt. 34-1). Defendant opposed class certification, arguing that Plaintiffs had not met their burden under Rule 23(a), specifically that the class was not ascertainable, commonality was lacking, and the named Plaintiffs are not adequate class representatives. Opp. to Class Cert. (Dkt. 41) at 11-20. Defendant also argued that Plaintiffs had failed to meet their burden to permit certification under Rule 23(b)(2), arguing that the putative class were not a cohesive group such that injunctive or declaratory relief would benefit them all equally. *Id.* at 20-23.

After hearing the motion, this Court granted Plaintiffs' motion and certified the following class pursuant to Federal Rule of Civil Procedure 23(b)(2):

> All current and former members of the United States Air Force, including the Air Force Reserve and Air National Guard, who, from July 1, 2019, to the present, (A) met the criteria for referral into the Integrated Disability Evaluation System ("IDES") under Department of Defense Instruction 1332.18 § 5.2, and (B) who were referred into the Air Force's Pre-IDES, and did not receive access to IDES.

Order (Dkt. 45); Notice (Dkt. 47); Order (Dkt. 48).

### III.    Defendant's Statement of Undisputed Facts and Response to Plaintiff's Statement of Undisputed Facts

Plaintiffs' challenge to DAFMAN 48-108 is brought under the APA. The APA confines review of Executive Branch action to the administrative record of proceedings before the pertinent agency. *See* 5 U.S.C. § 706; *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Courts have thus routinely held that when a statute "confines judicial review of executive branch decisions to the administrative record of proceedings before the pertinent agency . . . there can be no genuine issue of material fact." *Shipbuilders Council of Am. v. DHS*, 770 F. Supp. 2d 793, 802 (E.D. Va. 2011). Put simply, a particular "fact" is either reflected in the administrative record of agency proceedings or is not—and "[t]he entire case on review is a question of law, and only a question of law." *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). One therefore might question whether a statement of undisputed material facts (or a listing of those "facts" identified by plaintiff that defendant "disputes") is even necessary in the APA context. *See, e.g.*, *Spelman v. McHugh*, 65 F. Supp. 3d 40, 44 (D.D.C. 2014).

To comply with the Local Rules of this Court, *see* Loc. Civ. R. 56(B), and to provide a description of the administrative record at issue here, Defendant provides his own statement of facts below without duplicating what Plaintiffs provided, and will separately note any disagreement with Plaintiffs' statement of undisputed facts ("SUMF").

#### A.    Response to Plaintiffs' SUMF

1-37.    Labeled as "facts," Plaintiffs devote 37 paragraphs of discussion to statutory and regulatory sources to provide their understanding of the relevant legal framework at issue in this case. Moreover, these identified paragraphs neither cite nor reference the administrative record. Accordingly, this discussion of the background legal framework is a matter for the Court resolve and

is wholly independent from any presented facts in the administrative record for this case. *See Younger v. Crowder*, 79 F.4th 373, 378 (4th Cir. 2023).

### 1.      Katheen Watts

38-41.  Undisputed.

42-43.  Disputed. There is no record support for the representation that the IRILO Coversheet stated that Plaintiff Watts' condition was "[p]otentially unfitting." *See* AR125. Rather, after reviewing Watts' medical records, her commander's impact statement, and other documents, on April 19, 2023, the AMRO Board recommended Watts be returned to duty. AR 126, 137. The AMRO Board memorialized its recommendation and forwarded Watts' IRILO package to the DPMNR. AR 126. On April 25, 2023, the DPMNR adopted the AMRO Board's recommendation and ordered Watts back to duty with some restrictions. AR 121, 122.

44.     Disputed in part. Plaintiffs' quotation of the record is correct, but there is nothing to support that Plaintiff Watts required (or was eligible for) "a true MEB evaluation." Pl. Br. at 14.

45.     Undisputed.

46-50.  Though Plaintiffs have accurately quoted the cited portions of the administrative record, Plaintiffs' repeated assertion that Plaintiff Watts was unfit for service is not supported on this record. As the statement from her command reveals, Plaintiff could perform ███████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████ AR 136.

51-53.  Disputed. Without citation to any portion of the administrative record, Plaintiffs engage in attorney argument to contend that Plaintiff Watts was entitled to the DES process. The Court need not credit Plaintiffs' attorney-argument. *Rountree v. Fairfax Cnty. Sch. Bd.*, 933 F.2d 219, 223 (4th Cir. 1991).

### 2.      Robert Newman

54-56.   Undisputed.

57.      Disputed in part. ███████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████. AR 116-118.

58-61.   Disputed in part. Defendant does not dispute any of the quoted passages from the administrative record, but dispute the assertion that Plaintiff Newman had a "permanent, duty-limited condition" such that there was no function he could perform in the Air Force. As his command indicates, Plaintiff ██████████████████████████████████████████

████████████████████████████ AR 99. Plaintiffs' characterizations of "further procedural harm" and the AMRO Board "ignoring" particular evidence are attorney arguments which, as noted above, need not be credited. *Rountree*, 933 F.2d at 223.

61.      Disputed. Without citation to any portion of the administrative record, Plaintiffs engage in attorney argument to contend that Plaintiff Newman was entitled to the DES process. The Court need not credit Plaintiffs' attorney-argument. *Rountree*, 933 F.2d at 223.

3.      Ryan Miller

62.      Disputed. Plaintiffs have not identified any citation in the administrative record to support this fact.

63.      Disputed in part. Though Plaintiff Miller asserts his condition was duty limiting by January 2022, the cited record (AR 3) states that he ████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████ AR 3. ██████████████████████████

███████████████████████████████████████████ AR 7. Given this medical evidence, the Air Force Reserve Command ordered Plaintiff Miller back to duty with some restrictions in late 2022. AR 1.

64-71. Disputed. Each of these paragraphs do not contain a reference or citation to the administrative record, and as such, there is no support for them in a case where the entire matter on review is the administrative record. *Camp*, 411 U.S. at 142; *QinetiQ US Holdings, Inc. & Subsidiaries v. Comm'r of Internal Rev.*, 845 F.3d 555, 559 (4th Cir. 2017); *Sanitary Bd. of Charleston, W. Va. v. Wheeler*, 918 F.3d 324, 334 (4th Cir. 2019) ("A party challenging an agency bears a special burden of demonstrating that the court should reach beyond the record, either to examine information that should have been before the agency but was not, or to introduce extra-record evidence that the agency actually relied on that was omitted from the administrative record.").

**B.      Defendant's SUMF**

1.   Plaintiffs' certified class comprises: "All current and former members of the United States Air Force, including the Air Force Reserve and Air National Guard, who, from July 1, 2019, to the present, (A) met the criteria for referral into the Integrated Disability Evaluation System ("IDES") under Department of Defense Instruction 1332.18 § 5.2, and (B) who were referred into the Air Force's Pre-IDES, and did not receive access to IDES. Dkt. 48.

2.   Missing from Plaintiffs' SUMF are the following facts about the three named Plaintiffs:

   a.   <u>Named Plaintiff Kathleen Watts</u>: Plaintiff Watts was provided notice of her IRILO and an opportunity to be heard in the form of comments and memoranda. AR 137, 176-79. Plaintiff Watts provided comments relative to her potential disability on AF Form 1185. AR 137. Plaintiff Watts also provided a memorandum to AFPC AR 230, and a memorandum from the law firm representing her directly to Dr. Stangle of AFPC/DPMNR styled "Request for Entry into the DES and Medical Evaluation Board Review: Major Kathleen Watts." AR 176-79.

b. <u>Named Plaintiff Ryan Miller</u>: Miller asked his medical provider to be medically retired because he and his legal team believed he should be medically retired. AR 3. Miller was referred to the AMRO Board because he and his unit commander requested he be referred. AR 3. Miller's provider ███████████ ███████████████ AR 3. Miller's provider informed him ████████ █████████████████████████ █████████████████████████ ████████████ AR 1.

c. <u>Named Plaintiff Robert Newman</u>: Plaintiff Newman received notice he was facing an IRILO when he provided comments on his Commander's AF Form 1185 voicing █████████████████████ AR 100.

3.  Though Plaintiffs identified three servicemen who sought separation from the service due to medical reasons or believed separation for medical reasons was the appropriate disposition for their discharge, Plaintiffs' class fails to appreciate the circumstances of other similarly-class members.

4.  ████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ██████████████████████

5.  ████████████████████████████████ ███████ ████████████████████████████ ████████████████████████████

13



## STANDARD OF REVIEW

Under Rule 56, summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the Court must construe all facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law after showing that the non-moving party has failed to meet the evidentiary burden on an essential element of that party's cause of action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-movant cannot survive summary judgment by showing "[t]he mere existence of a scintilla of evidence in support" of her or his claims; to the contrary, she or he must proffer "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

Because both parties in this case have moved for summary judgment, the court is to consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Bacon v. City of Richmond*, 475 F.3d 633, 637–38 (4th Cir. 2007) (internal quotation omitted). Consistent with the general summary judgment standard, in the face of cross-motions for summary judgment, "the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation omitted).

## ARGUMENT

### I.    Pre-IDES is consistent with the statute and Department of Defense policy (Counts II-IV).

The Air Force's pre-IDES process comports with the governing statutory scheme and Department of Defense regulations implementing that scheme. As described below, 10 U.S.C. § 1201 *et seq.* vests discretion in the Secretary of the Air Force to establish regulations on referring members to the DES. Plaintiffs' arguments to the contrary rest on assumptions not supported by the statute, regulation, or the record, including the overbreadth of the class here.

15

**A. Nothing in the Statute or Governing Regulations Prevents the Air Force From Creating a Unified System for Referrals to DES.**

The statutory requirements for a disability evaluation system are found in Title 10, Section 1201 *et seq.* "Upon a determination by the Secretary concerned that a member described in subsection (c) is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred . . . the Secretary may retire the member, with retired pay . . . , if the Secretary also makes the determinations with respect to the member and that disability specified in subsection (b)." 10 U.S.C. § 1201(a). In order to determine whether a member is fit for continued service, "[t]he Secretary concerned shall prescribe regulations to carry out this chapter within his department." 10 U.S.C. § 1216(a). Furthermore, "the secretary concerned has all powers, functions, and duties incident to the determination under this chapter of (1) the fitness for active duty of any member of an armed force under his jurisdiction . . . and (4) the entitlement to, and payment of, disability severance pay to any member of an armed force under his jurisdiction." *Id.* § 1216(b). The plain language of both § 1201(a) and § 1216 make clear that Congress delegated discretionary authority to the Secretaries of the military departments to determine whether a member is fit for continued military service. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024) ("When the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits.").

In the National Defense Authorization Act for Fiscal Year 2008, Congress directed the Secretary of Defense and Secretary of Veterans Affairs "to develop a policy on the improvements to the processes, procedures, and standards for the conduct of physical disability evaluations of recovering service members by the military departments and by the Department of Veterans Affairs." PL 110–181 § 1612(b)(1), 122 Stat 3 (Jan. 28, 2008) ("2008 NDAA"). Department of Defense

16

Instruction ("DoDI") 1332.18 is the result of that Congressional directive.[12] DoDI 1332.18 establishes the Disability Evaluation System ("DES"), which "is the mechanism for determining fitness for duty because of disability, and whether a service member . . . found unfit for duty due to disability will be separated or retired." DoDI 1332.18 § 1.2(a). Crucially, however, DoDI 1332.18 preserves Congress' statutory directive, found in 10 U.S.C. § 1201(a), that the Secretaries of the military departments are the ultimate arbiters of fitness for duty: "[i]n determining a member's disability rating, the *Secretary of the Military Department concerned* will consider all medical conditions, whether singularly, collectively, or through combined effect, that render the Service member unfit to perform the duties of their office, grade, rank, or rating." DoDI 1332.18 § 1.1(h) (emphasis added).

Per DoDI 1332.18, the DES consists of "(1) referral and [multidisciplinary briefing]. (2) Medical evaluation, including the [Medical Evaluation Board], impartial medical reviews, and rebuttal. (3) disability evaluation, including the [Physical Evaluation Board], counseling, case management, adjudication, and final disposition." DoDI 1332.18 § 3.1(a). "The Secretaries of the Military Departments" will use the DES "for all newly initiated cases referred under the duty-related process." *Id.* § 3.1(b).

Section 1201(a) does not require any particular referral method. Nor does DoDI 1332.18 specify *how* a Secretary is to refer a member into the DES. *See* DoDI 1332.18 § 5.2. DoDI 1332.18 does, however, provide general criteria for referral. *See id.* § 5.2(a). But how does a Secretary determine whether a service member meets this general criteria in DoDI 1332.18? In the Air Force, the answer is pre-IDES. The pre-IDES is the exercise of Secretary of the Air Force's discretion in determining how to refer a member into the DES. The Secretary's discretion flows directly from 10 U.S.C. §

---

[12] *See also* DAFMAN 48-108 § 2.2 ("The IDES process integrates the Air Force DES with the VA, and delivers the advantage of single-sourced disability ratings that are accepted by both the DoD and the VA, so the member will receive VA benefits shortly after separation or retirement.").

1216(a), which permits the Secretary to "prescribe regulations" to "carry out" the DES, of which referral is a standalone, first step. *See also* DoDI 1332.18 § 5.1.

There is nothing arbitrary and capricious or contrary to law about pre-IDES. It comports with Title 10, as it seeks to refer only those with "permanent and stable" disabilities that preclude continued service. It comports with DoDI 1332.18, as competent medical authorities review whether a member meets the referral criteria under § 5.2. And it helps meet the statutory and policy goal of uniformity, as it funnels referrals to a centralized medical authority that can consistently apply the § 5.2 referral criteria. At bottom, nothing prohibits the Secretary of the Air Force from determining that pre-IDES is how he will refer members to DES.

### B.  Plaintiffs' Position Rests on Fundamentally Flawed Assumptions.

Plaintiffs' arguments rest on a number of incorrect assumptions about the governing statutory and regulatory scheme. Each of these assumptions are addressed in turn below.

*Plaintiffs' assumption 1: The referral criteria in DoDI 1332.18 and the trigger events in DAFMAN 48-108 are the same.* The referral criteria in DoDI 1332.18 and the trigger events in DAFMAN 48-108 are *not* the same. DAFMAN 48-108 trigger events "are conditions or occurrences which *may indicate* a service member has medical or mental health conditions that are inconsistent with retention standards or deployability." DAFMAN 48-108 § 2.3 (emphasis added). "Trigger events *include, but are not limited to*," five enumerated circumstances, including a command-directed evaluation "due to poor duty performance or deployment concerns stemming from a potential medical or mental health condition," or a service member with a long-standing medical deferment and the "medical condition appears unlikely to resolve within 300 cumulative calendar days" of the start of the medical deferment. *Id.* § 2.3.1 (emphasis added).

In contrast, the DES directs that *only* medical authorities will refer eligible service members into the DES "when the course of further recovery is relatively predictable or within 1 year of

18

diagnosis, whichever is sooner" where the service member has "(1) one or more medical condition that may . . . prevent the service member from reasonably preforming the duties of their office, grade, rank, or rating . . . ;" "(2) a medical condition that represents an obvious medical risk to the health of the member or to the health or safety of other members;" or (3) "a medical condition that imposes unreasonable requirements on the military to maintain or protect the service member." DoDI 1332.18 § 5.2(a). DAFMAN 48-108 contemplates developing medical conditions, which may (or may not) progress into a condition that, when stabilized, will prevent the member from carrying out their job responsibilities. DAFMAN 48-108 therefore encompasses a broader range of medical conditions than DoDI 1332.18 § 5.2(a). And this makes sense, given that the statute defines disability as a condition or conditions that "based on accepted medical principles . . . is of a permanent nature and stable." 10 U.S.C. §1201(b). Trigger events are not meant to be definitive pronouncements that a condition is "of a permanent nature and stable." Rather, trigger events are the first step to determining "whether the course of further recovery is relatively predictable," DoDI 1332.18 § 5.2(a), such that referral to DES is appropriate.

*Plaintiff's assumption 2: Disability is synonymous with diagnosis.* A diagnosis does not mandate referral to DES. Indeed, this is confirmed by the definition of "disability" in DoDI 1332.18: "A medical impairment, mental disease, or physical defect *standing alone does not constitute a disability.*" DoDI 1332.18 at 66 (emphasis added). A fitness for duty determination—which is the ultimate determination of the DES, *see* 10 U.S.C. § 1201(a); DoDI 1332.18 § 5.2(a)(1)—requires more than a mere medical diagnosis. There is no statutory or regulatory support for the idea that referral to DES must take place immediately after a service member receives a diagnosis. Indeed, both statute and regulation point in the opposite direction—the disability must be "of a permanent nature and stable," 10 U.S.C. § 1201(b)(1), with stable defined in DAFI 36-3212 as "a physical or mental defect or condition that is

19

not likely to change significantly in degree of severity over a specified period of time," *id.* at 79. Pre-IDES hews more closely to the statutory and regulatory directives than Plaintiffs' proposed alternative.

*Plaintiffs' assumption 3: A service member's individual provider must make the referral to DES.* Put simply, there is no support in either the statute or DoDI 1332.18 that an individual service member's medical provider is the *only* individual who can refer a service member to the DES. DoDI 1332.18 requires that "competent medical authorities" will make referrals to the DES. DoDI 1332.18 § 5.2. The pre-IDES is staffed with "competent medical authorities." "The AMRO Board is comprised of a team of medical professionals that meet at least monthly to review service members with a duty limiting condition that affects mobility, retention, or long-term physical fitness." DAFMAN 48-108 § 1.2.4. The DPNMR, which is staffed by medical professionals, Woody Decl. (Dkt. 41-1) ¶ 1, receives the AMRO Board's recommendations and determines whether an individual meets the referral criteria in DoDI 1332.18 § 5.2.

*Plaintiffs' assumption 4: A service member's individual provider is best positioned to meet the statutory and regulatory goal of consistent application of retention standards.* The 2008 NDAA directed that the new policy for physical disability evaluations create uniform procedures. 2008 NDAA § 1612(b)(2). That directive was echoed in DoDI 1332.18 § 1.2(d): "the standards for all determinations related to disability evaluation will be consistently applied to all Service members[.]" This policy goal is explicitly stated in DAFMAN 48-108, which notes that the goal of pre-IDES is to "carefully screen service members for potentially unfitting conditions, so they are appropriately referred into the DES to determine if a return to duty adjudication is appropriate." DAFMAN 48-108 § 2.2.1. "In order to minimize inappropriate referrals," and thus fulfill the statutory purpose of uniformity and consistency, the Air Force created the pre-IDES. *Id.* The Air Force has the same set of medical professionals determining whether active duty members meet DoDI 1332.18's referral criteria. In the other military departments, each individual provider is left to puzzle that out on her own. This means that in the other military

20

departments, thousands of different medical authorities are determining whether to refer to the DES, as opposed to the one neutral, third-party staff of medical professionals in the Air Force. It goes without saying that pre-IDES, which channels every case through a centralized medical authority with a wealth of experience making fitness for duty determinations, more closely aligns with the statutory and policy goal of uniformity than the other military departments.

*Plaintiffs' assumption 5: Members of the Air Force are deprived of rights enjoyed by their counterparts in the other military departments.* Plaintiffs appear to imply that members of the other military departments—who are directly referred on an ad hoc basis to the DES by their individual providers, *see Ford v. United States*, 2026 WL 1208122, at *12 (Fed. Cl. Apr. 30, 2026)—enjoy more procedural protections than those in the Air Force. This is false. An Air Force member who is found fit for duty by DPNMR is in the same position as a service member in the Navy or Army whose provider declines to refer them to the DES—there is no right to counsel, no formal appeal of that decision, and no right to an independent medical review. *See generally* Army Reg. 635-40; SECNAVINST 1850-4F. Indeed, in the Air Force, the decision to return to duty is recommended by the AMRO Board and then affirmed by DPNMR, giving that member more process than her counterpart in another military department who must rely on a single individual to refer to the DES. And in cases where the DPNMR determines that the service member should be referred to the DES, it is doing so using the same medical standards as individual providers in other military departments—DoDI 1332.18 § 5.2.

*Plaintiffs' assumption 6: Only the Air Force interposes barriers between a medical provider and the DES.* Finally, Plaintiffs argue *any* interposition of a process between a medical provider and a member going to the DES is illegitimate and unlawful. Plaintiffs also state: "The Army, Navy, and Marine Corps all refer service members directly into the IDES upon the identification of a potentially unfitting condition, without interposing an administrative gatekeeping step." Pl. Br. at 13. Plaintiff also argue that in misconduct cases, the other branches do not use a "gatekeeping process," arguing that "[e]very

21

other branch of the military manages these scenarios using existing regulations without resorting to an unlawful Pre-IDES gate-keeping process." *Id.* at 29.

A look at the relevant regulations belies Plaintiffs' argument. In specific cases, the Navy uses post-referral, pre-DES processes to screen out some individuals with certain misconduct—in plain language, some sailors with a referral from a physician who has not yet entered the DES must obtain a "final determination of referral" from a General Officer/Flag Officer who can also decide to disapprove the referral. SECNAV M-1850.1 § 9(c)(1).[13] The Army goes a step further and affirmatively disenrolls individuals once they are within the DES if they are pending certain adverse actions or involuntary administrative action. *See* Army Reg. 635-40 ¶ 4-3(f)(1).[14] For misconduct separations that have been approved, a soldier may even be disenrolled from the PEB and the matter must be reviewed by the General Court Martial Convening Authority. *See id.* ¶ 4-9.

This discussion may seem far afield, as the regulations of the Army and Navy are not at issue here. Nevertheless, to the extent that Plaintiffs argue the Air Force is alone in "extra-statutory gatekeeping" or that the Air Force processes are so repugnant to uniformity that they are unlawful, Plaintiffs have the burden of demonstrating this lack of uniformity. They have not done so here. Plaintiffs do not engage with the reality that the military departments interpose their own processes to administering the DES, including for misconduct.

## C. The Reach of Plaintiffs' Class Confirms that the Pre-IDES Process is Consistent with DoD's and Air Force's Regulations.

Plaintiffs fail to appreciate that given the breadth of their class, their requested remedies are incompatible with DoDI 1332.18. The real-world examples that Defendant provided in the supplemental appendix confirm this. The class includes those with misconduct proceedings, ███

---

[13] https://www.secnav.navy.mil/doni/SECNAV%20Manuals1/1850.1.pdf

[14] https://armypubs.army.mil/ProductMaps/PubForm/Details.aspx?PUB_ID=1000960

████; those serving a court-martial sentence, (███████); those facing an involuntary separation in lieu of court martial, (████████); and those with medical conditions limiting the performance of duties where both the servicemember and her or his command wish to continue service (█████████ Indeed, Plaintiffs do not dispute that these four supplemental examples fall within the class—nor could they— given that each of these four individuals has a medical condition that may make the servicemember potentially unfit for some aspect of their respective duties. *See generally* SuppAR 1-19. Instead, Plaintiffs call the real experiences of service members (and fellow class members) "distractions," Pl. Br. at 29, even though they have been charged to represent the legal interests of these servicemen. But the lived experiences of these servicemembers are far from distractions. Their personal circumstances, and those in similar circumstances to them, matter. By bringing these experiences to the forefront, it becomes quickly apparent that Plaintiffs' requested class-wide relief is not compatible with the referral criteria in DoDI 1332.18 § 5.2, which Plaintiffs ostensibly seek to vindicate in this action. In short, considering the reach of the certified class as shown through the supplemental appendix, Plaintiffs' preferred remedy—that anyone with a *potentially* duty-limiting condition automatically be entered into the DES—contravenes DoDI 1332.18

Plaintiffs make clear that as part of their relief, the Court should "mandat[e] that all service members who are determined by an authorized medical provider to suffer from a potentially unfitting medical condition be referred into the IDES process." Pl. Br. at 1-2.[15] But in doing so, Plaintiffs require those servicemembers in a disciplinary action (*e.g.*, ██████████████) to be referred to a process, for which—as Plaintiffs concede—these servicemembers may be "completely ineligible." Pl. Br. at 29; *see*

---

[15] Plaintiffs argue that "Defendant assumes that the Class is seeking a particular outcome following the IDES." Pl. Br. at 30. Far from it. Defendant appreciates that as requested, Plaintiffs' relief mandates ineligible servicemembers to enter the DES, because in Plaintiffs' view, *the* lone referral criteria is a medical condition that *may* limit a servicemember's ability to perform their duty. *See* Pl. Br. at 22.

*also id.* (admitting that ▮▮▮▮▮ is "ineligible for the IDES"). By Plaintiffs' own admission , they invite this Court to issue a ruling that contradicts the very DES provisions they claim the Air Force is violating. This only confirms that the pre-IDES harmonizes all the regulatory requirements of DoDI 1332.18 by ensuring that only those eligible for the DES (*i.e.*, servicemembers with no misconduct or other disqualifying conditions under DoDI 1332.18 § 5.4) reach that process. Otherwise, Plaintiffs would require those to enter the DES process pursuant to DoDI 1332.18 § 5.2, despite being ineligible under DoDI 1332.18 § 5.4. Though Plaintiffs try to claim that this system "blocks *all* Airmen from accessing their statutory rights," Pl. Br. at 29, they implicitly concede that those who have disqualifying misconduct have *no* rights to the DES process. Accordingly, granting Plaintiffs' requested class-wide relief to these ineligible members contradicts DoDI 1332.18 § 5.4.

Moreover, the overbreadth of the class confirms that the pre-IDES process better aligns with DoDI 1332.18 and, in some cases, means that the Air Force can retain members who have a desire to continue to serve. As exemplified by service members like ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

No doubt the class representatives (*i.e.*, named Plaintiffs) recognize the dissonance between their interests and those, like ▮▮▮▮▮ who wish to remain in the service and not receive a disability determination. Pl. Br. at 30. Plaintiffs shoo those concerns away and claim that this is something that can be resolved at the remedy phase. [16] But that answer, taken to its logical conclusion, only confirms

---

[16] In support, Plaintiffs rely on *Springs v. Del Toro*, 2023 WL 8190859 (D.D.C. Nov. 27, 2023) and *Torres v. Del Toro*, 2022 WL 5167371 (D.D.C. Oct. 5, 2022). *Springs* is not a case in which the "court granted summary judgment," as Plaintiffs represented, Pl. Br. at 30. *Springs*, 2023 WL 8198059, at *4. Rather, *Springs* involved a decision on the Navy's motion to voluntarily remand the case to the agency for an

that there is a need for a pre-IDES screening process. If specific carveouts from the class must be made to ensure that those who wish to remain in the service (*e.g.*, ███████ or those who are ineligible do not enter the DES (*e.g.*, ██████████████), that rule in effect establishes a new pre-IDES screening process—albeit one that is borne out of Court ordered compliance rather than Air Force's regulations. No doubt Plaintiffs will resist that conclusion, but that is the logical consequence of sculpting a remedy that accounts for all these different circumstances. Whether following any order of this Court that accounts for these particularized circumstances, or the pre-IDES screening process articulated in DAFMAN 48-108 § 2.2.2, the end result is the Air Force conducting a review of all potential DES referrals to ensure they are, in fact, DES eligible. That so many sub-species of potentially unfit servicemembers exist, and that some of them are ineligible for the DES process, it is thus proper for the Air Force to design an administrative structure that screens out those who are truly ineligible to be referred to DES.

In short, the four servicemembers identified in the supplemental appendix are far from "cherry-picked examples," as Plaintiffs claim. Pl. Br. at 28. They are part of the certified class and confirm that Plaintiffs' requested relief runs contrary to the interests of those four service members (and those similarly situated) and, in some cases, requires ineligible members to be referred to the DES in violation of DoDI 1332.18.

---

interpretation of the underlying regulation. *See id.* at *2. But even that aside, *Springs* is unhelpful to Plaintiffs because the Court did not independently conclude that the difference in interests between the class and the named class representatives could be resolved at the remedy phase. The Court instead noted the "the parties agreed that such concerns are likely to be rare and can, in any event, be addressed at the remedial stage of this case if necessary." *Springs v. Del Toro*, 2022 WL 741865, at *6 n.2 (D.D.C. Mar. 11, 2022). There is no such mutual representation here. *Torres* is also unhelpful to Plaintiffs because there is no reference to the interests of class representatives being different other class members notwithstanding Plaintiffs' representation to the contrary, Pl. Br. at 30.

## II.    Plaintiffs have no property interest in the *referral* to DES. (Count I).

Plaintiffs allege that "potential eligibility for disability retirement benefits confers a property interest" such that they are entitled to certain procedural safeguards before they are deprived of such potential eligibility. Compl. ¶ 140; *see also id.* ¶¶ 141-144; *Mallette v. Arlington Cnty. Emps. Suppl. Ret. Sys. II*, 91 F.3d 630, 634 (4th Cir. 1996) (repeating well-settled law that a plaintiff is entitled to procedural due process if she holds a constitutionally protected property interest). Plaintiffs argue that there is a property interest in their ability to be referred to DES.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). "Although clothed in due process protection by the Constitution, 'property interests' are the creatures of independent positive law." *Mallette*, 91 F.3d at 634. Thus, to determine whether Plaintiffs have a constitutionally protected property interest, there must be "an independent source of a claim of entitlement." *Id.* (internal quotation marks omitted). Plaintiffs contend there are two such independent sources—10 U.S.C. § 1201 and the 2008 NDAA. Compl. ¶¶ 139, 141. Neither are applicable.

Section 1201 of Title 10 does not create a property interest in whether a member is eligible for DES. In *Kelly v. United States*, the Federal Circuit held that "[m]ilitary disability retirement benefits under 10 U.S.C. § 1201 are nondiscretionary and statutorily mandated." 69 F.4th 887, 900 (Fed. Cir. 2023). "And like the statutes providing veteran disability benefits, 10 U.S.C. § 1201 provides a right to military disability retirement benefits *to qualified individuals*. Thus, if a service member *is eligible* under 10 U.S.C. § 1201, the service member's military disability retirement benefits are nondiscretionary and statutorily mandated." *Id.* (emphasis added). *Kelly* is not as broad as Plaintiffs would have this Court believe. Pursuant to 10 U.S.C. § 1201(b), whether an individual is "qualified" is determined by the Secretary of the relevant military department. And it is left to the Secretary's discretion to "prescribe

26

regulations" to determine how the Secretary will determine whether a member is a "qualified individual." 10 U.S.C. § 1216(a). *Kelly*, therefore, does recognize a property interest in being *referred* to DES.

This reading of *Kelly* is confirmed by the Federal Circuit's subsequent decision in *Dillon v. United States*. 2025 WL 2528324, at *4 (Fed. Cir. Sept. 3, 2025). In *Dillon*, the Federal Circuit clarified that the property interest is not created *until* the Secretary determines that an individual is "qualified" for military disability retirement pay. "We have recognized that 'military disability retirement benefits under 10 U.S.C. § 1201 are nondiscretionary,' but that recognition means only that, '*if* a service member is eligible under 10 U.S.C. § 1201,' and retired under that authority, then benefits become mandatory." 2025 WL 2528324, at *4 (Fed. Cir. Sept. 3, 2025) (emphasis in original) (quoting *Kelly*, 69 F. 4th at 900). "Such compulsion does not deprive the Secretary of authority, with a range of discretion, to make the 'determination' that the service member is unfit and to decide not to 'retire the member.'" *Id.* Albeit an unpublished decision, *Dillon* confirms that there is no property interest in disability retirement *until* the Secretary has determined eligibility for such benefits. In other words, *Dillon* makes clear that there is no property interest in the *referral* to DES, foreclosing Plaintiffs' argument here.

The Fourth Circuit's view of property interests is similar to that of the Federal Circuit's—once eligibility for a particular benefit has been established, the property interest attaches. The Fourth Circuit's decision in *Mallette* is instructive. In that case, the Fourth Circuit considered whether the plaintiff-appellant, a civilian employee of Arlington County, had a property interest in disability retirement benefits. 91 F.3d at 634. Arlington was required by state law to provide a retirement system for its employees and had decided to do so via creating its own retirement system, which included disability retirement pay. *Id.* Employees paid into the system throughout their employment with the county. *Id.* at 635. The Fourth Circuit found "Arlington's ordinance speaks to its officials in

27

compulsory terms: qualifying members 'shall receive' benefits. That mandatory language creates a 'legitimate claim of entitlement' in employees *who meet the System's standards*." *Id.* at 635 (emphasis added). Thus, like *Kelly* and *Dillon*, once an employee was found eligible for the benefits, there was no further discretion—the benefits had to be paid. *Id.* at 635; *see also Smith v. Ashcroft*, 295 F.3d 425, 430 (4th Cir. 2002) (noting that in *Malette*, "the county employees *who met the requirements* had a claim of entitlement in disability retirement benefits protected by due process." (emphasis added)). Critically, in *Malette* the Fourth Circuit found that the property right was created once the employee had demonstrated a *prima facie* entitlement to the benefits, *not* at the moment the employee applied for the benefit. 91 F.3d at 636.

Here, the *prima facie* eligibility to entitlement occurs once the DPNMR refers to the DES, *not* at the moment of a new diagnosis. *See supra* Section I.A. And, as Plaintiffs highlight, once referred to DES a member is entitled to certain procedural protections. Pl. Br. at 5-6. But there is nothing in the statute or regulations that requires procedural protections if the member is not referred to DES.

In short, the collective import of *Kelly*, *Dillon*, and *Malette* is that Plaintiffs do not have a property right in the *potential* for disability retirement pay. Nor is such a property right created by Section 1602 of the 2008 NDAA. *See* Compl. ¶ 141. That section defines the "disability evaluation system" as "a system or process of the Department of Defense for evaluating the nature and extent of disabilities affecting members of the Armed Forces that is operated by the Secretaries of the military departments and is comprised of medical evaluation boards, physical evaluation boards, counseling of members, and mechanisms for the final disposition of disability evaluations by appropriate personnel." 2008 NDAA § 1602(3). The 2008 NDAA is silent as to whether the definition of "disability evaluation system" creates any property right, let alone any property right in referral for a disability evaluation system. And as before, the 2008 NDAA must be read against 10 U.S.C. § 1216, which vests the Secretary of the Air Force with the ability to create regulations to implement the DES, including how

28

to refer members to the DES. As such, the 2008 NDAA is not an independent source of entitlement to a property right in referral to the DES.

Finally, DoDI1332.18 § 5.8 states that "[n]either referral into the DES nor a finding of unfitness constitutes entitlement to disability benefits." Thus, by its own terms, DoDI 1332.18 explicitly precludes the creation of any property interest by the mere act of referral into DES. To the extent that Plaintiffs claim DoDI 1332.18 creates an independent source of entitlement, such an argument is foreclosed by its plain text.

But even if there was such a property interest in referral, numerous Plaintiffs received notice of the IRILO and an opportunity to be heard.

*Notice.* All members referred for an IRILO are required to be notified. DAFMAN 48-108 § 2.4.1.1. PEBLOS are also instructed to compile all the information from the servicemember to prepare the IRILO for review. *Id.* Additionally, § 2.4.1.2 requires the PEBLO to coordinate with the Commander to complete the AF Form 1185, *Commander's Impact Statement for Medical Evaluation Board. Id.*

*Opportunity to be heard.* Numerous Plaintiffs provided comments for DPMNR (or ARC/SG) in their AF Form 1185 to be considered as part of the IRILO. Plaintiff Newman voiced ███████████ ███████████████████████████████████████" AR 100. ███████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

Plaintiff Watts provided comments, in addition to memoranda she directly submitted to DPNMR. AR 137, 176-79, 230.

Thus, even if there were a property interest in referral—which Defendant maintains there is not—Plaintiffs were given notice and afforded an opportunity to be heard.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court grant his motion for summary judgment and deny Plaintiffs' motion for the same.

Dated: June 18, 2026                                       Respectfully submitted,

                                                           TODD W. BLANCE
                                                           ACTING ATTORNEY GENERAL

                                                   *By:*＿＿＿＿＿＿/s/＿＿＿＿＿＿
                                                           MEGHAN E. LOFTUS
                                                           MATTHEW J. MEZGER
                                                           Assistant United States Attorneys
                                                           Office of the United States Attorney
                                                           2100 Jamieson Avenue
                                                           Alexandria, Virginia 22314
                                                           Tel:    (703) 299-3757/3741
                                                           Fax:    (703) 299-3983
                                                           Email:  Meghan.Loftus@usdoj.gov
                                                                   Matthew.Mezger@usdoj.gov

                                                           *Counsel for Defendant*